UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVONTE ANTONIO RYMES,

        Petitioner,

                          Case No. 2:17-cv-10182

v.                          HONORABLE STEPHEN J. MURPHY, III

MARK MCCULLICK,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

Devonte Antonio Rymes is serving time in a Michigan prison after being convicted by a Wayne County Circuit Court jury. The jury found him guilty of the following crimes: armed robbery (Mich. Comp. Laws § 750.529), assault with intent to commit murder ("AWIM") (Mich. Comp. Laws § 750.83), being a felon in possession of a firearm (Mich. Comp. Laws § 750.224f), resisting or obstructing a police officer (Mich. Comp. Laws § 750.81d(1)), and possessing a firearm during the commission of a felony (Mich. Comp. Laws § 750.227b). The court sentenced him as a second habitual offender to concurrent terms of 30 to 50 years' imprisonment on the armed robbery and AWIM convictions, a concurrent term of 5 to 7 and-one-half years' imprisonment on the felon in possession conviction, concurrent terms of 2 to 3 years' imprisonment on the resisting or obstructing convictions, and a consecutive term of 2 years' imprisonment on the felony firearm conviction in 2013.

Rymes now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2254. He raises claims concerning the sufficiency of the evidence, the conduct of the prosecutor, and the effectiveness of trial counsel. For the reasons below, the Court will deny his petition with prejudice, deny him a certificate of appealability, and deny him leave to proceed in forma pauperis on appeal.

## BACKGROUND

Rymes's convictions arise from an armed robbery and police chase on March 25, 2013 in Detroit, Michigan. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). They are as follows:

> On March 25, 2013, at approximately 11:30 p.m., Brandon Foote was walking home alone in the middle of Queen Street in Detroit, Michigan. Detroit Police Officers Johnny Fox and Joshua Christian were on patrol in the area at the time. Officer Fox was wearing a thermal black shirt and a Polo black shirt that stated "'Police'" on the front and back, and a black jacket with his silver police badge clipped to it. The black jacket was open so that the word "Police" on the Polo shirt would have been visible. Officer Christian was dressed similarly, except that he was wearing a black hooded sweatshirt with the word "Police" on the front and the back of the sweatshirt instead of a black jacket. The officers were driving a fully marked police car on the night of the incident.
>
> As Foote approached the intersection of Queen and Alma, a car drove past him. He looked back twice when he heard a car door shut, but he did not see anyone, when he looked back a third time, approximately 10 seconds after hearing the car door slam, Foote saw defendant standing behind him and pointing a gun approximately 8 to 10 inches away from him. Defendant was at least 1 ½ feet away from Foote and stated, "'You know what time it is. Run your pockets.'" Foote could see the tip of the gun, and reached into the right pocket of his jacket to hand his cell phone over to defendant. Foote intentionally tripped himself to make himself fall so that defendant would not shoot him. Foote sat down, leaned back and reached toward defendant to give him the cell phone.
>
> During the same time period, Officers Fox and Christian were walking to their

2

police car on Queen when they saw Foote walking in the middle of the street. A car passed them and when the vehicle stopped, defendant got out of the passenger side of the vehicle. Officer Fox saw defendant run toward Foote with his arm extended. Officer Christian saw defendant point a silver handgun at Foote. The officers believed that an armed robbery was taking place, so they proceeded toward the scene of the robbery. Officer Fox took out his gun and stated over his police radio that there was an armed robbery in the area of Alma and Queen. By this time, Foote had fallen to the ground and defendant was standing over him, Officer Fox was headed toward them on the sidewalk while Officer Christian ran southbound in the middle of Queen. As they approached defendant, Officer Christian told defendant to drop the gun or stop. Christian testified that he told defendant he and Fox were police officers. Foote testified that he heard a police officer state "Freeze, don't shoot," but he never heard them identify themselves as police officers, though he could tell that they were by their clothing.

As soon as defendant was given the command by the police, he began to run away while turning his body and firing a shot at Officers Christian and Fox. By this time, defendant was 15 to 19 feet away from Officer Christian. According to Officer Fox, defendant did not look at the officers before firing the gunshots, Officer Christian believed he was firing at him. The officers returned gunfire. Defendant fired a second gunshot toward the officers, which prompted Officer Christian to fire three more gunshots. Defendant then fell to the ground, having been shot by the officers in the buttocks and chest. The officers immediately secured defendant's handgun, a .40 caliber Smith and Wesson. Forensic evidence failed to identify defendant's DNA on the handgun, but did identify some of the bullets recovered from the scene as coming from defendant's handgun.

*People v. Rymes*, No. 320224, 2015 WL 2412369, *1–2 (Mich. Ct. App. May 19, 2015) (unpublished) (footnotes omitted).

Following his convictions and sentencing, Rymes filed an appeal of right with the Michigan Court of Appeals raising several claims of error, including those presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id.* at *2–6. Rymes also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Rymes*, 498 Mich. 921, 871 N.W.2d 198 (2015).

Rymes then filed his federal habeas petition. He raises the following claims:

I. The assault with intent to murder convictions must be reversed where the prosecution's evidence was insufficient to prove beyond a reasonable doubt that he intended to commit murder; alternatively, one of the two assault with intent to murder counts must be vacated where the evidence does not support the conviction beyond a reasonable doubt.

II. He was denied his state and federal constitutional rights to due process of law and a fair trial guaranteed him through the Sixth and Fourteenth Amendments and const. 1963, Art. 1, §§17, 20 through improper, burden shifting argument of the prosecutor. Further, trial counsel's failure to object deprived him of his Sixth Amendment right to the effective assistance of counsel.

Respondent has filed an answer to the petition contending that it should be denied because the prosecutorial misconduct claim is barred by procedural default and all of the claims lack merit.

## STANDARD OF REVIEW

Rymes filed his petition in 2017, so the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413) (quotation marks omitted). The state court's application must have been more than incorrect or erroneous—it must be "objectively unreasonable." *Wiggins*, 539 U.S. at 520–21. The standard is thus "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Section 2254(d) requires the Court to determine what arguments or theories supported or could have supported the state court's decision. The Court must then ask whether fairminded jurists could possibly disagree "that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

5

Finally, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), but a petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

**DISCUSSION**

I. Procedural Default

As an initial matter, Respondent contends that Rymes's prosecutorial misconduct claim is barred by procedural default due to his failure to make a timely objection at trial and the Michigan Court of Appeals' denial of relief, in part, based upon the failure to object. On habeas review, however, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is somewhat complex and intertwined with the substantive claims, and the substantive claims are more readily decided on the merits. Accordingly, the court need not address the procedural default issues and shall proceed to the merits of the habeas claims.

II. Merits

    A. Insufficient Evidence Claim

6

Rymes first asserts that he is entitled to habeas relief because the prosecutor failed to present sufficient evidence to support his AWIM convictions, particularly as to the element of intent. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

Under Michigan law, the elements of AWIM are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399–400 (2000), including identity, *People v. Kern*, 6 Mich. App. 406, 409–10 (1967), and intent or state of mind, *People v. Dumas*, 454 Mich. 390, 398 (1997). The use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470 (1975).

The Michigan Court of Appeals applied the *Jackson* standard when it denied relief on Rymes's insufficiency-of-the-evidence claim and its decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As

the court noted, the prosecution presented sufficient evidence to support both of the AWIM convictions. The police and eyewitness testimony established that Rymes drew his gun and fired two shots at the police officers as he was fleeing the scene of the armed robbery. Officer Fox testified that Rymes pointed the gun at him and Officer Christian, that they were less than 20 feet away from Rymes, and that they were near each other when Rymes fired the shots. Viewed in a light favorable to the prosecution, such testimony was sufficient for the jury to conclude beyond a reasonable doubt that Rymes acted with the requisite intent to commit AWIM as to both officers.

Rymes also challenges the inferences that the jury drew from the evidence presented at trial. Resolving evidentiary conflicts is the job of the fact-finder at trial, not the Court's. *See Jackson*, 443 U.S. at 326. The trial court's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Rymes committed both of AWIM offenses of which he was convicted.

Lastly, to the extent that Rymes asserts that the trial court erred under state law in some fashion with regard to the insufficient evidence claim, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law; habeas relief does not lie for perceived errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

B. Prosecutorial Misconduct Claim

Rymes next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by shifting the burden of proof during closing arguments. Respondent contends that this claim lacks merit (in addition to being procedurally

defaulted).

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Rymes objects to the following statement made by the prosecutor during closing arguments:

> Look at the evidence. Is there anything to contradict what Mr. Foote and the circumstantial evidence, that he had no control over, supports his testimony, his indication that he, Mr. Foote, was just trying to get home. And he was walking down Queen, saw a vehicle cross in front, heard the door of a vehicle close, and knowing because he's out at 11:30, he needs to be vigilant. On the third turnaround—he turned around twice and saw no one. The third turn around, he's face-to-face, at less than arm's length distance, from Mr. Rhymes [sic], and Mr. Rhymes's [sic] got a gun on him, saying, "Run your pockets, you know what time it is."

11/21/13 Trial Tr., p. 6.

The Michigan Court of Appeals denied relief on this claim on plain error review finding that the prosecutor's statement was not improper and that it did not affect the outcome at trial and its decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] Rymes fails to show that the prosecutor's argument was improper, let alone fundamentally unfair. Although a prosecutor may not shift the burden of proof, *United States v. Clark*, 982 F.2d 965, 968–69 (6th Cir. 1993), he may "argue the record, highlight the inconsistencies or inadequacies

---

[1] The Court would reach the same result under a de novo standard of review.

9

of the defense, and forcefully assert reasonable inferences from the evidence," *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). A prosecutor may highlight weaknesses in a defense case by pointing out the absence of supporting testimony or documents, so long as he does not "tax" the defendant's right to not testify. *United States v. Roux*, 715 F.3d 1019, 1031 (7th Cir. 2013). In Rymes's case, the prosecutor's argument was based upon the testimony presented at trial and he pointed out the lack of evidence contradicting the prosecution's case. The prosecutor did not comment on Rymes's decision not to testify or improperly shift the burden of proof to the defense.

Even so, to the extent that the prosecutor's argument could be seen as improper, it was not so pervasive or misleading as to affect the fairness of the trial. Any potential prejudice to Rymes was also mitigated by the fact that the trial court properly instructed the jury on the burden of proof and reasonable doubt, explained that the attorneys' comments are not evidence, and set forth the elements of the charged offenses. *See* 11/21/13 Trial Tr., pp. 38-40; 59-69. And jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001). Rymes fails to establish that the prosecutor's remarks during closing arguments rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

    C.    Ineffective Assistance of Trial Counsel Claim

Lastly, Rymes asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct during closing arguments. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466

U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Michigan Court of Appeals cited the *Strickland* standard when it denied relief

on Rymes's ineffective-assistance claim and its decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Court of Appeals explained that the prosecutor did not commit misconduct because Rymes failed to show that the prosecutor's statement improperly shifted the burden of proof and, therefore, an objection by defense counsel would have been futile. *Rymes*, 2015 WL 2412369 at *5. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) Rymes therefore fails to establish that trial counsel was ineffective under the *Strickland* standard. Accordingly, habeas relief is not warranted on this claim.

III.     Dismissal and Appeal

The court concludes that Rymes is not entitled to federal habeas relief on the claims he presented and will therefore dismiss his petition. Should Rymes wish to appeal this decision, he must first secure a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a habeas petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having considered the matter, the court concludes that Rymes fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. For that reason, the Court will deny him a

certificate of appealability and likewise deny him leave to proceed in forma pauperis on appeal as an appeal could not be taken in good faith. *See* Fed. R. App. P. 24(a).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED LEAVE** to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.


Dated: June 22, 2018        s/Stephen J. Murphy, III
                                       STEPHEN J. MURPHY, III
                                       United States District Judge


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 22, 2018, by electronic and/or ordinary mail.

                                         s/David P. Parker
                                         Case Manager